Mr. Morris, a law enforcement officer who makes a suspect's seized cell phone display information on a screen has performed a Fourth Amendment search. And when that law enforcement agent does that, as Detective Baumgarten did here, and does it without a warrant and not under any exception, the search is unreasonable. And thus, it violated the Fourth Amendment when Detective Baumgarten made the suspect's phone, my client Mr. Brixen's, show information on it. It was unreasonable and should have been suppressed. Now, suppose that the police had just called, had called the cell phone, held it up and said, you might want to answer this. There's an incoming call from this, what do you call it, the screen name or something. Board 14. Is that a problem? I think when we're talking about rings or sounds, there really is no reasonable expectation of privacy. Okay, fine. So let's change the fact pattern to there's no ring, but on the face of the cell phone pops up incoming call from whatever the phone number is. So something's displayed on the screen, but it's an I don't think officers should be looking at, post-Riley, should be looking at the screens of phones. If it, if I understand your hypothetical correctly, if the officer is looking at a phone that he's lawfully or otherwise, lawfully seized and it just happens that a call comes in from a third party, I think that's one thing. But if it's the officer just calling from one to another, I don't think Riley allows you to do that because the screen, if you're looking at the screen, you're getting data from inside the phone. And I think that's why the Supreme Court drew that bright line about if you want information from the phone, you're going to have to get a warrant. And I think the point here is... The question is what information from the phone was revealed? The content of the message was the work of the agent. Yes. So all that was revealed was that the screen lit up. It wasn't... Same as with a phone call, right? Two points there. First is that, yes, he's sending a message, but the information is the notification that it came up on that phone rather than his partner's phone or somebody who worked... But that's exactly the same as with a phone call. You learn what phone rings. Yes, but you have a... You don't have a reasonable expectation of privacy in a ring. If I have my phone on in here and it rings, I can't possibly have any subjective, let alone objective expectation that other people won't hear it. You can't shut off your ears. Other people are going to hear it. But that's true if you put your phone on silent mode and I call you right now or in vibrate mode and you pick it up and you look at it and you see my incoming call from my number. So all you have here is a different medium. You have an instant message. Yes. And I think the screen matters. And that's what the difference is there, is that if I have a phone in my pocket and it's only notifying with little three-second notifications, no vibrating, no sound, that's for me. I've done as much as I can to reasonably conceal that from exposure to others. I understand. I think the screen might matter in a circumstance where you have an individual under arrest and there's no phone calling or instant messaging or anything like that. But you say, I wonder what the screensaver picture is. And you push the button. Now there you have an argument. You're getting something from inside the phone. You're getting part of the content. But I don't see how with instant message or phone call, you're getting anything like that. I think, well, there's a reason, first of all, the detective did it because it gave him information that he wanted. Namely, is this the person that I've been exchanging messages with? Or is the holder of this phone the person likely that's been exchanging messages with? I think they knew, don't you, when he showed up in the parking lot who it was? Yes, and that's what makes this even more, I guess, I think that just strengthens our case, which would be, look, what Riley sketched out best practices here, which is if you get a phone, search incident to arrest, you should turn it off or put it in one of those Faraday cages so the signals can't go in and out because you want to preserve the phone. Forensically, you want to take a snapshot of it right before you took it. And you don't want law enforcement, you don't want that phone to be transmitting and receiving any kind of data after it's been seized. And the point of that is the longer that period is when it's transmitting and receiving information, after it's out of the defendant's hands, it can create evidentiary problems that a defense lawyer could bring up at trial. Well, got on the phone after you had it but before you turned it off. And I think that's why that matters here is we get pretty deep into the weeds once we start making exceptions or carve-outs for, well, if this appeared on the screen, that's fine. Or if that appeared on the screen in this certain way, that's fine. And I think the Riley court quite rightly said we can't, it's a mistake for us to wade into this. Law enforcement does best with clear rules about what they can do and what they can't do. And what they've made pretty clear in Riley is, look, if you have a cell phone that you've seized incident to arrest, you should probably be turning it off or at least getting it in one of those, I guess, aluminum pouches that officers have in their cars now. And that's how you preserve a cell phone. Especially if you think you have probable cause to arrest the guy already, you know you can get a warrant for that phone in 15 minutes. And so it's not as if enforcing the rule here is going to keep law enforcement from getting something it otherwise wouldn't get. The phone's out of his hands. There's nothing more he can do with it. In fact, it's best for the phone to shut it off. So I think... Can you touch upon the government's argument that the case is not justiciable real quick? Yeah. And I guess in other words, are you challenging the validity of the order, denying the motion to suppress? Yeah. And I think our quick point there is, yes, this is justiciable. This is something that matters. And I'll tell you, I guess, first of all, the idea that it has to be case dispositive or the appellate court shouldn't be hearing it. You're in your rebuttal time, you know. I'll finish. I can tell you a rebuttal.  All right. Then my response is, whether or not it's case dispositive shouldn't matter because the dispositive standard is a really... It can't just be the dispositive standard would be that, oh, it's impossible to go forward with the case. You can suppress a gun in a gun case or drugs in a drug case, and you could still get a conviction, certainly get past the grand jury if you didn't have those things. And so having this standard that, well, it doesn't eat up all the evidence or it makes it very hard rather than super difficult isn't really a workable standard. And so I'll reserve that last minute. Certainly counsel. Ms. Altman. Thank you, Your Honor. May it please the court, my name is Elizabeth Altman, and I represent the United States in this case. And I would like to start, I guess, where Mr. Moyers left off, and that is whether or not this court has jurisdiction to hear this case. I agree that the issue doesn't have to be dispositive, but there has to be some sort of remedy that this court can give that the defendant would benefit from should there be a ruling in his favor. In this case, the defendant concedes that the search warrant would have been valid even without Detective Baumgarten's actions. The federal charges were based... Why are you thinking only about the warrant rather than about whether this evidence that the phone beeped and lit up was admissible at trial? The district court denied a motion to suppress this particular bit of evidence. Right, so had there been a trial, under the district court's ruling, it would have been admissible. Why isn't that a real, live issue? I agree that that would be a real, live issue, Your Honor. However, that particular part of the evidence most likely would not have been admissible at trial. It was not the basis for any of the charges. It was not nothing that the federal charges had absolutely nothing to do with the defendant communicating with the undercover officer or meeting the undercover officer at the mall. Nothing whatsoever in the federal charges even relied on that at all. The federal charges relied entirely upon what was based on that phone. There was no statement that he made in response to the Snapchat that would have been used. We didn't know what was in the phone, obviously, until it was searched sometime later, so he wasn't questioned about it. He wasn't asked about it. He didn't make any comments about it. That is why that specific evidence would not have been admissible. It didn't have anything to do... If you had gone to trial, though, I know this is hypothetical. If you had gone to trial, couldn't you have used the whole parking lot encounter and the Snapchat message and all that at trial just to show this is absolutely the defendant and this is the defendant's phone? I'm not saying you would have, but couldn't you have as part of just telling the jury the story, this is the guy's phone and now we're going to get to the main attraction, which is the evidence that was recovered after we searched it? I think that's a hard distinction to make between could have and would have because I wouldn't have. Would a judge have allowed it? I don't know the answer to that. It seems unlikely. The production charges were very robust in that you could identify the defendant in the pictures, you could identify the juvenile in the pictures. Having my experience with our district court judges right now is that this may not have been admissible and my own personal experience, I would have... May not have been admissible on what theory? It wasn't relevant? The defendant's identity is always relevant to a criminal charge and this would help show identity. Or is it perhaps a Rule 403 theory that identity had already been shown or wasn't being contested and this would just be a waste of time? I think it would have been a waste of time. It would have come in that the phone was taken off of his person and then there were images of him and a child on the phone. That is what I see a child looking like. So you think there would be a Rule 403 objection? Yes. I mean, should the court disagree? And it seems that it does. We don't think that the fact that it was a Snapchat chat notification as opposed to a ring makes any difference. There was no dispute that the phone was lawfully seized. The officer had it in his possession, could see it. The detective sent a message to the phone. The defendant himself gave the detective the phone number or the Snapchat identification to communicate with him, to use to communicate with him as part of the undercover activity. He was essentially giving the officer permission to communicate with him and to send that phone messages. And then to answer the question about the difference between a visual notification and a ring, we know that a ring is okay, and it seems that there can't be a difference between sight and sound when it's in plain sight. Just thinking about it logistically, that would require an officer to know whether someone had their phone turned off or on vibrate or the volume turned off before they sent a message because if it was turned off and they sent a message or called it, then they were violating someone's Fourth Amendment rights, but they weren't if the phone was turned on. That just simply can't be the case. Unlike Riley that the defendant relies on, there was no manipulation of the phone. There was no attempt to retrieve information. This is simply the equivalent of a confirmatory ring and was not a search. Unless the court has any further questions, I would rely on my brief. Again, we don't believe the court has jurisdiction. We don't think this evidence would have come in. But in the alternative, it certainly was not a search. I got one quick question for you. The defendant pled guilty to the count of producing child pornography. Is that right? Yes. So what was your sense of his thinking on reserving this issue for appeal? I don't have any idea. Do you have any concern about the validity of that plea? No. Well, I guess I'm not concerned about the validity of the plea because he was. I mean, he conditioned his plea, right, on reserving this issue and litigating it and has no bearing whatsoever on the charge to which he pled guilty to. Correct. I would also point out that below, and we did absolutely agree that this was a conditional plea, and everyone anticipated this appeal. Below, he did not concede that the search warrant was valid. We briefed that. It was decided. It was unknown. I didn't know that on appeal he would be conceding that issue, and I think that's where the problem comes in with it being justiciable. Okay. Thank you. Thank you, Ms. Altman. Anything further, Mr. Moyers? Yes. The one issue I would take with Ms. Altman, with her argument, is at least as far as this Court's inclined to adopt a plain view analysis, is that we would argue that the officer, he was lawfully in the right place. He could be there, but he didn't have lawful access to the screen and it wasn't immediately apparent, I guess, that it was contraband or incriminating evidence. So we would argue that the plain view exception here doesn't apply. As for I'd like to be able to answer, I can't really reveal about what our case strategy would have been, given that we conceded the warrant was fine, and trying to get this evidence suppressed. Thank you very much. The case is taken under revising.